F. E. REUNING and Sarah Louise Reuning, Appellants,

v.

C. V. HENKEL, Jr., Appellee.

No. 7249.

United States Court of Appeals Fourth Circuit.

Argued Oct. 12, 1956.

Decided Nov. 21, 1956.

Bradley Roberts, Bristol, Va., and Robert A. Collier, Statesville, N. C. (Scott, Collier & Nash, Statesville, N. C., and Stant & Roberts, Bristol, Va., on brief), for appellants.

Kenneth D. Wallace, New York City, and A. B. Raymer, Statesville, N. C., (Raymer & Raymer, Statesville, N. C., Cahill, Gordon, Reindel & Ohl, New York City, John R. McLaughlin and C. B. Winberry, Statesville, N. C., on brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and ALBERT V. BRYAN, District Judge.

ALBERT V. BRYAN, District Judge.

The point of this case is whether the defendant, already the owner of one half of the entire capital stock of Terminal Warehouse Company, Inc., was in fact the agent of the plaintiffs, for the sale of their one-half interest in the corporation, at the time he subsequently acquired their interest. If he was, then he must account to the plaintiffs, as they now demand, for one half of the profit which he immediately thereafter derived through his dissolution of the corporation, his consequent accession as sole stockholder to all the corporate property, and his prompt sale of the real estate.

The District Court denied recovery to the plaintiffs, finding in fact that the defendant had fairly bought the plaintiffs' stock under a standing offer of sale, or option to purchase, that had been extended voluntarily by them to him in his

own right, free of any trust relationship between them.

The controlling issues in the case were wholly factual. There was sharp conflict in the evidence of the parties; but there is substantial evidence supporting the intermediate findings of the District Judge. These, in turn, sustain his ultimate finding. Nothing in the record intimates a misapprehension by the judge of the effect of the evidence or suggests that his decision does not embody the truth and right of the case. Hence, the plaintiffs' appeal to us to vacate the determination of the District Court cannot succeed. Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A. Sanders v. Leach, 5 Cir., 1946, 158 F.2d 486, 487. A narrative of the District Judge's subsidiary findings will demonstrate the logical soundness of his decision on the whole case.

Terminal Warehouse Company was a Virginia corporation owning a tract of land improved by industrial buildings and located in Bristol, Virginia. In 1946 its sole activity was the holding and leasing of its real estate; its earnings were relatively nominal. One half of its capital stock was then owned by the plaintiffs, Fred Reuning and his wife, Sarah Louise Reuning, and in June, 1946 the defendant, C. V. Henkel, Jr., became the owner of the remaining half of the capital stock, paying $125,000.00 for it. Shortly afterwards the Reunings suggested that Henkel buy their interest too. Unlike Reuning, Henkel was never an officer or director of Terminal.

Since 1942 one of Henkel's enterprises, Norwood Woolen Mills, had been the lessee and occupant of the heart of Terminal's property. In 1946 Henkel decided to dispose of Norwood, and in November of that year the Bigelow-Sanford Carpet Company, Inc., of New England, became interested in acquiring it. Recalling the plaintiffs' desire to sell their stock, and having in mind the possibility that Bigelow might want to buy the real estate leased by Norwood, Henkel broached the whole subject to the plaintiffs on December 2, 1946 in their home in Bristol. He explained to Reuning his negotiations with Bigelow, and also told Reuning of an inspection tour of the plant proposed by Bigelow's representatives for the next day. On this visit he pointed out to the plaintiffs the possibility that Bigelow might be interested in the acquisition of Terminal's real estate. To meet this eventuality he asked the Reunings for a firm price to him on their stock. Following a discussion of its value, the defendant left with a quotation from the plaintiffs of $150,000.00 for their stock.

After Bigelow's representatives had looked over the plant and examined the books of Norwood, they called Henkel, on December 19, to come to New York for a conference on the succeeding day. Before leaving on this trip Henkel telephoned Reuning, told him of his proposed trip to New York, and asked and received a reaffirmance of Reuning's price of $150,000.00 for the plaintiff's stock. Henkel met Bigelow's officers and counsel in New York on December 20. Bigelow offered him $476,600.00 for Terminal's entire outstanding capital stock, provided Terminal should first have acquired Norwood's equipment and leasehold. The offer embraced Terminal's real property but not its accounts receivable, cash on hand, or any personal property. There was no allocation of the price between equipment and real estate.

Immediately Henkel telephoned Reuning from New York, advised him of Bigelow's interest in procuring the real estate, and requested Reuning to forward his stock to New York to an escrow agent for delivery upon payment of his price. This Reuning refused to do, insisting that it was Henkel's "deal" and saying, "You pay me". Henkel told him he did not have "a deal" but had only reached a tentative understanding with Bigelow, emphasizing, "I don't want your stock unless I make a deal".

In this conversation Reuning inquired if the transaction could not be postponed until after January 1, 1947 and, further, if it could not omit an adjacent lot of ground owned by Terminal. In response

Henkel was positive that Bigelow would not allow these concessions. Henkel then informed Reuning that Henkel would be obligated to pay a 5% commission to the broker, if he should "work out anything with Bigelow". Reluctant to pay any commission, Reuning replied that he would take $145,000.00 for the plaintiffs' stock, leaving Henkel to take care of any commission. The telephone conversation ended with Henkel saying he would call Reuning again.

The next day, December 21, the defendant again met with Bigelow's men. Later on the same day, he telephoned Reuning to draw on Henkel through the latter's bank in New York for $145,000.-00, at sight, attaching plaintiffs' stock and Reuning's resignation as an officer and director of Terminal, for delivery on payment of the draft. Henkel completed arrangements to honor the draw. Then Henkel on the same day again conferred with Bigelow. In this meeting the prior offer was withdrawn because Bigelow was fearful it could not obtain a good and marketable title to the land from Terminal. It demanded warranties of title from Henkel. To follow the method of transfer advised by Bigelow's counsel would entail an increase of income taxes to Henkel of about $35,000.00. To meet this liability Bigelow added this amount to its offer, thus advancing it to $511,-600.00.

The method agreed upon was this: Terminal should acquire and retire the Reuning stock; thereupon Henkel the sole stockholder should liquidate Terminal, causing the real estate to be conveyed to Henkel personally; Henkel should then convey, with customary warranties of title, the real estate to Bigelow; concurrently Henkel should execute a bill of sale to Bigelow of all of Norwood's equipment at the Bristol plant, together with an assignment of the lease.

Reuning's draft was paid December 23, 1946, Henkel buying the stock for Terminal. In a few days the Henkel-Bigelow agreements were formalized and executed. At the instance of Henkel, solely for tax purposes, the contract price was al-

lotted: $126,600.00 for the Norwood equipment, $385,000.00 to the real estate. On February 3, 1947 the agreements were fully performed. Besides the real estate, Henkel received in the distribution of the corporate assets, Terminal's cash on hand and its other personal property. His total receipts, for half of which the plaintiffs now sue, are computed by them as follows:

Cash of Terminal on hand....$   771.12
Sale of coal on hand.......... 5776.25
Return of unearned insurance
    premiums ................ 2452.71
Income tax refund........... 14069.71
Sale of proceeds of Terminal
    real estate for $385,000.00,
    an excess over the agreed sale
    price of the entire capital
    stock at $300,000.00........ 85000.00

                Total     $108069.79

The plaintiffs have constantly maintained that the defendant represented to them, from the beginning, that he was treating with Bigelow for the sale of their stock and Henkel's together; that Henkel was their agent for a sale to Bigelow at the best terms obtainable; that the price they gave to Henkel in the telephone conversations was for a sale to Bigelow; that they at no time contemplated a sale to Henkel or Terminal; that never—on December 2, 1946 or before or after that date—did they offer to sell, or give an option to buy, to Henkel; that he abused his trust of agency by buying the stock in his own behalf without first disclosing to them that he in truth was the purchaser; and that thereafter he realized a large profit through what was in effect a re-sale of the stock to Bigelow.

As corroborative of their contention—that it was never an option but always an agency to Henkel—the plaintiffs advert to the effort to charge them a commission, to the discussion of the elimination of the lot of ground from the transaction, and to their request that Bigelow defer the purchase until after January 1, 1947, none of which, they argue, was

consistent with a sale to Henkel on a previously fixed basis. Henkel's omission to advise them, on his calls from New York, of the whole of the agreement with Bigelow and Henkel's refusal afterwards to discuss the matter with Reuning and his attorney are referred to by the plaintiffs as indicia of fraud. In addition, they mention the social friendship between Henkel and themselves, and liken the status between them of sole stockholders to the relation of partners, to establish the fiduciary position they charge to Henkel in the purchase of the stock.

The immediate answer to this argument is that the trier of the facts considered all of these circumstances, but he found them insufficient to outweigh other evidentiary facts that pointed to an arm's length sale inter pares. Not "clearly erroneous", the finding must stand. Rule 52(a) supra.

The trial judge's conclusion is also trestled by the fact of the plaintiff's failure to question the transaction until nearly a year after its occurrence. This lapse is excused by Reuning on the ground that not until December, 1947 did he learn that his stock had been sold to Henkel and that Henkel had liquidated Terminal. But we think the evidence shows that the Reunings became apprised of these facts certainly by February, 1947.

From the time of Reuning's sale of his stock until the consummated transfer to Bigelow in February, 1947, Henkel was in notorious possession of the land and buildings of Terminal. In this period he dissolved the corporation, took a deed for Terminal's real estate, collected the rents, notified the other tenants of his ownership of the property, and changed Terminal's insurance policies to his name as owner of the property. Indeed, one of these changes was made through Reuning's own insurance agency, pursuant to the direction of Henkel in January, 1947, and the agency advised its principal that Henkel was now the owner. Again, on February 4, 1947 Henkel himself cancelled this policy through Reuning's agency and the letter of cancel-

lation described Henkel as successor to Terminal. For the return premium Reuning's agency drew its check payable to Henkel individually. Plaintiffs' forbearance to protest, for almost a year, warrants the inference that they had no valid complaint about the transaction.

We do not find it necessary to rule upon the defense of the statute of limitations, but rest our affirmance upon the failure of the appellants to show that the factual conclusion of the District Judge should not be accepted.

Affirmed.